IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ANDREW A. CEJAS,

    Plaintiff,                          No. CIV S-05-1799 LKK GGH P

   vs.

LOU BLANAS, et al.,                   <u>AMENDED</u>

    Defendants.                 <u>FINDINGS & RECOMMENDATIONS</u>

_____/

Plaintiff is a state prisoner proceeding pro se with a civil rights action pursuant to 42 U.S.C. § 1983. Pending before the court is defendants' summary judgment motion filed May 4, 2009. For the following reasons, the court recommends that defendants' motion be granted.

<u>Summary Judgment Standards Under Fed. R. Civ. P. 56</u>

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

Under summary judgment practice, the moving party

> always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

1

Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986) (quoting Fed. R. Civ. P. 56(c)). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See id. at 322, 106 S. Ct. at 2552. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323, 106 S. Ct. at 2553.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11, 106 S. Ct. at 1356 n. 11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

/////

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587, 106 S. Ct. at 1356 (citation omitted).

On November 26, 2007, the court advised plaintiff of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Rand v. Rowland, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); Klingele v. Eikenberry, 849 F.2d 409, 411-12 (9th Cir. 1988).

Discussion

This action is proceeding on the third amended complaint attached to plaintiff's February 15, 2007, objections as to defendant Oreschak only. At the time of the alleged

deprivations, plaintiff was a pretrial detainee in the Sacramento County Jail.

Plaintiff alleges that on October 25, 2004, defendant Oreschak denied the entire pod dayroom access in retaliation for plaintiff's filing of a grievance signed by all of the pod inmates regarding the denial of day room access.[1] Plaintiff alleges that on October 31, 2004, defendant retaliated against him again for filing a grievance regarding day room access by denying his entire pod day room access.

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. Rizzo v. Dawson, 778 F.2d 527, 532 (9th Cir.1985); see also Valandingham v. Bojorquez, 866 F.2d 1135 (9th Cir.1989); Pratt v. Rowland, 65 F.3d 802, 807 (9th Cir.1995).

"Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal." Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005).

In the summary judgment motion, defendant does not dispute that on October 25, 2004, and October 31, 2004, plaintiff's entire pod was denied day room privileges. Defendant argues that he is entitled to summary judgment because the pod lost day room access in order to advance a legitimate correctional goal. In particular, defendant states that on these days inmates were passing unauthorized items during pill call. See summary judgment motion, exhibit C, defendant's declaration, ¶ 4. According to defendant, inmates passing items during pill call is a significant problem for staff because it not only hinders the distribution of medications to inmates, but can also result in the passing of contraband items, kites and/or weapons between inmates. Id.

---

[1] The other claims in the third amended complaint were previously dismissed.

In his opposition, plaintiff argues that putting the pod on lockdown did not advance legitimate correctional goals. In his verified declaration submitted in support of his opposition, plaintiff states that inmates passing items during pill call is not a significant problem because it does not hinder staff in the distribution of medication. Plaintiff also states that during pill call, no weapons or contraband have ever been passed because a deputy has always been present.

While plaintiff may not be an expert on the administration of jail facilities, his observation that inmates passing items during pill call does not create a problem does not require specialized knowledge. Plaintiff's observation that no weapons or contraband have been passed because a deputy is always present also does not require specialized knowledge of the administration of jails. Based on plaintiff's statements in his opposition, the court finds that whether placing the inmates on lockdowns on these dates advanced legitimate penological goals is a materially disputed fact.

Defendant also moves for summary judgment on grounds that prior to October 25, 2004, and October 31, 2004, he was unaware that plaintiff had filed an inmate grievance concerning the denial of dayroom access. Id., ¶ 6. However, because the alleged retaliation occurred almost contemporaneously to when plaintiff filed his grievances, the court must reasonably infer in plaintiff's favor that defendant knew of the grievances.

For the following reasons, defendant is entitled to summary judgment because the denial of dayroom access on two non-consecutive days did not chill plaintiff's exercise of his First Amendment rights and because plaintiff suffered only de minimis injury.

In order to state a colorable retaliation claim, an inmate must allege either that the alleged retaliation either chilled the inmate's exercise of his First Amendment rights or that he suffered more than minimal harm. Rhodes, 408 F.3d at 567 n. 11. An objective standard governs the chilling inquiry. Brodheim v. Cry, No. 07-17081, 2009 WL 3448411 at * 8 (9th Cir. Oct. 28, 2009). "A plaintiff does not have to show that 'his speech was actually inhibited or

1  suppressed,' but rather that the adverse action at issue 'would chill or silence a person of ordinary
2  firmness from future First Amendment activities.'" <u>Id.</u>, quoting <u>Rhodes</u>, 408 F.3d at 568-69.
3          On July 22, 2009, the court ordered the parties to file further briefing addressing
4  the issue of whether the denial of day room access on two occasions was more than minimal
5  harm. <u>Cool Fuel, Inc. v. Connett</u>, 685 F.2d 309, 311 (9th Cir. 1982) (court may sua sponte grant
6  summary judgment if a litigant is given reasonable notice that the sufficiency of their claim is at
7  issue).
8          In the July 22, 2009, order, the court tentatively found that the injury plaintiff
9  suffered as a result of defendant's alleged retaliation, i.e. denial of day room access on two
10  nonconsecutive days, was de minimis. As a result of no day room access, plaintiff could not use
11  a telephone, take a shower or watch television. <u>See</u> Third Amended Complaint, ¶ 35. In the July
12  22, 2009, order the court stated that going without showering, telephones and television for these
13  brief, non-consecutive periods of time is a de minimis hardship.
14          On August 12, 2009, plaintiff filed a response to the July 22, 2009, order. In this
15  response, plaintiff alleges that defendant denied him day room access for ten consecutive days
16  beginning October 25, 2004.
17          The third amended complaint alleges that plaintiff was locked down on October
18  25, 2004, and October 31, 2004. <u>See</u> Third Amended Complaint, ¶ 57 (on October 25, 2004,
19  defendant Oreschak placed plaintiff's pod on lockdown); ¶ 50, 52 (defendant locked down his
20  pod from October 31, 2004 to November 1, 2004); ¶ 51-52 (on November 2, 2004, defendant
21  Oreschak stated on the intercom that the pod would be released for day room). The third
22  amended complaint did not allege that defendant denied plaintiff day room access for ten
23  consecutive days.
24          In his opposition to the pending motion, plaintiff alleges that "[o]n the evenings of
25  October 25, 2004 through November 2, 2004, the 3 East 300 pod lost dayroom privileges due to
26  inmates engaging in authorized passing of items." Court file doc. 78, pp. 6-7, ¶ 6. However, he

1  goes on to argue, "Cejas alleges that Deputy Oreschak denied his entire 300 pod on the evening
2  of October 25, 2004, and plaintiff's tier on the evening of October 31, 2004." Id., p. 12.
3         The court also observes that on February 29, 2008, plaintiff filed a pleading titled
4  "Plaintiff's Response to Defendants' Motion for Summary Judgment," although there was no
5  summary judgment motion pending. Attached to this pleading as an exhibit is a letter dated
6  November 4, 2004, from plaintiff to Captain Iwasa at the Sacramento County Jail. Court file
7  doc. 54, p. 59 of 60. In this letter, plaintiff complains that on October 25, 2004, and October 31,
8  2004, defendant Oreschak retaliated against plaintiff's pod by denying it dayroom access.
9  Plaintiff does not claim in this letter that his pod was denied dayroom access for ten consecutive
10 days. Id.
11        Up until his August 12, 2009, pleading, plaintiff has represented that he was
12 denied day room access on two, non-consecutive days. Although his opposition argues that he
13 was denied day room access from October 25, 2004, "through" October 31, 2004, plaintiff
14 clearly states in that pleading that he was denied day room access on those two dates only.
15 Plaintiff may not amend his complaint by way of his opposition to a summary judgment motion
16 to conform his factual allegations to the law in order to state a colorable claim. For these
17 reasons, the court considers whether the non-consecutive two day denial of day room access
18 would chill a person of ordinary firmness from future First Amendment activities or whether it
19 constitutes more than minimal harm.
20        The court finds that the denial of dayroom access on two non-consecutive days
21 would not chill or silence a person of ordinary firmness from future First Amendment activities.[2]

---

[2] Defendant's alleged retaliation against plaintiff for filing grievances did not chill plaintiff's exercise of his First Amendment rights as he continued to file numerous grievances and letters complaining about jail conditions. See Third Amended Complaint, ¶ 27 (on January 9, 2005, plaintiff filed administrative grievance); ¶ 28 (on January 27, 2005, plaintiff filed a reply to a response to a grievance); ¶ 29 (on January 29, 2005, plaintiff filed another grievance); ¶ 31 (on or around January 27, 2005, plaintiff sent a letter to Captain Iwasa); ¶ 32 (on February 2, 2005, plaintiff mailed a letter to Captain Iwasa); ¶ 41 (on November 5, 2004, plaintiff replied to a response to a grievance); ¶ 44 (on November 14, 2004, plaintiff replied to a response to a

Going without showering for one day is a minor inconvenience that would not have the effect of intimidating a person of ordinary firmness not to pursue First Amendment activities. Not being able to watch television for one day would clearly not deter a person of ordinary firmness from future First Amendment activities. Going without telephone access meant that plaintiff could not contact his relatives or friends for one day. The undersigned does not find that not being able to have a telephone conversation with friends or relatives for two non-consecutive days would deter a person of ordinary firmness from future First Amendment activities. Assuming plaintiff had ongoing criminal litigation, he may have been denied telephone access to his lawyer for two-non consecutive days. A person of ordinary firmness would also not be deterred from First Amendment activities just because he could not contact his lawyer by telephone on two non-consecutive days.

In <u>Brodheim</u>, <u>supra</u>, the Ninth Circuit found that the following phrase in a response to an administrative appeal would chill a person of ordinary firmness from pursuing First Amendment activities: "I'd also like to warn you to be careful what you write, req[u]est on this form." 2009 WL 3448411 at *2. The Ninth Circuit found this phrase to contain an implicit threat that a consequence would occur if the plaintiff failed to heed the warning. <u>Id.</u>, at 6. In the instant case, defendant did not threaten plaintiff, either orally or on paper. The instant case is distinguishable from <u>Brodheim</u> because the denial of day room did not constitute a threat.

The undersigned further finds that the denial of access to showers, television and telephones for two, non-consecutive days is a de minimis hardship. Going without a shower for one day is a minor inconvenience as is not being able to use the telephone. Going without watching television for one day does not result in any harm.

In sum, there have to be some limits placed on what constitutes a sufficiently adverse act for purposes of retaliation. As stated in <u>Morris v. Powell</u>, 449 F.3d 682, 686 (5th Cir.

grievance); ¶ 45 (on November 4, 2004, plaintiff wrote a letter to Captain Iwasa regarding retaliation).

2006): "[The objective retaliation 'person of ordinary firmness'] standard achieves the proper balance between the need to recognize valid retaliation claims and the danger of 'federal courts embroiling] themselves in every disciplinary act that occurs in state penal institutions.'" [quoting Woods v. Smith, 60 F.3d 1161, 1166 (5th Cir. 1995)]. Because the denial of dayroom access for two non-consecutive days would not chill a person of ordinary firmness from exercising their First Amendment rights and because plaintiff suffered de minimis injury, defendant should be granted summary judgment.

Defendant also moves for summary judgment on grounds that he is entitled to qualified immunity.

In resolving a claim for qualified immunity the court addresses two questions: (1) whether the facts, when taken in the light most favorable to plaintiff, demonstrate that the officer's actions violated a constitutional right and (2) whether a reasonable officer could have believed that his conduct was lawful, in light of clearly established law and the information the officer possessed. Anderson v. Creighton, 483 U.S. 635, 107 S.Ct. 3034 (1987). Although the Supreme Court at one time mandated that lower courts consider these two questions in the order just presented, more recently the Supreme Court announced that it is within the lower courts' discretion to address these questions in the order that makes the most sense given the circumstances of the case. Pearson v. Callahan, --- U.S. ----, 129 S.Ct. 808, --- L.Ed.2d ----, 2009 WL 128768 (January 21, 2009).

Because the court finds that defendant did not violate plaintiff's constitutional rights, it need not address the remaining elements of qualified immunity.

Accordingly, IT IS HEREBY RECOMMENDED that defendant's summary judgment motion (no. 76) be granted.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within twenty days after being served with these findings and recommendations, any party may file written

1 | objections with the court and serve a copy on all parties.  Such a document should be captioned
2 | "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections
3 | shall be served and filed within ten days after service of the objections.  The parties are advised
4 | that failure to file objections within the specified time may waive the right to appeal the District
5 | Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: 11/09/09

/s/ Gregory G. Hollows
_____
UNITED STATES MAGISTRATE JUDGE

cej1799.sj(2)